FRACTIONAL SCHOOL DISTRICT NO. 9, WATERFORD AND PONTIAC TOWNSHIPS, v. BEARDSLEE.

1. ADVERSE POSSESSION—PERIOD OF PERMISSIVE OCCUPANCY MAY NOT BE TACKED ONTO HOSTILE PERIOD.

    Period of occupancy under permissive right may not be considered as hostile and time of such period tacked onto period of hostile occupancy so as to show adverse possession.

On right of reverter of lands conveyed for school purposes, see annotation in 44 L. R. A. (N. S.) 1220.

Hostility as essential element of adverse possession, see 15 L. R. A. (N. S.) 1192.

Unbroken continuity as essential element of adverse possession, see annotation in 15 L. R. A. (N. S.) 1202.

2. DEEDS—REVERTER—CONDITION SUBSEQUENT—CONVEYANCE BEFORE BREACH.

Right of reverter reserved to grantor, his heirs, and assigns, dependent on breach of condition subsequent, may not be conveyed or assigned before the breach.

3. SAME—CONVEYANCE BEFORE BREACH OF CONDITION SUBSEQUENT EXTINGUISHES RIGHT OF REVERTER.

Where land was conveyed to school district subject to reversion to grantor, his heirs, and assigns in case it ceased to be used for school purposes, a right of reverter dependent upon breach of condition subsequent was reserved, which was extinguished by grantor's conveyance thereof before breach of condition subsequent, leaving title in school district without qualification.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted June 6, 1929. (Docket No. 85, Calendar No. 34,235.) Decided October 7, 1929.

Bill by Fractional School District No. 9 in Waterford and Pontiac townships, Oakland county, a municipal corporation, against Elmer L. Beardslee and others to quiet title to land. From a decree for plaintiff, defendants appeal. Affirmed.

*Tillson & Tillson,* for plaintiff.

*George A. Cram,* for defendants.

BUTZEL, J. Fractional School District No. 9 in the townships of Waterford and Pontiac, Oakland county, Michigan, is a municipal corporation and plaintiff in this cause. Upwards of 50 years ago it built a schoolhouse on a triangular piece of land situated in the east half of the southeast quarter of section 13, township of Waterford, Oakland county, Michigan. The land is more particularly described as:

"Beginning at the intersection of the northerly line of the highway formerly known as the Saginaw

Turnpike and now known as the Dixie Highway or Michigan–U. S. 10, with the westerly line of the highway on the township line between the townships of Pontiac and Waterford, said highway being marked Silverwood Avenue on the plat of Oakland Hills Subdivision, thence northwesterly along the northerly line of said Dixie Highway or Michigan–U. S. 10 distant 256.7 feet or thereabouts to the southerly line of a street or highway running northeasterly to said Silverwood avenue, thence northeasterly along the southeasterly side of said street or said highway running northwesterly to Silverwood avenue as aforesaid distant 202.3 feet or thereabouts to the westerly line of Silverwood avenue, thence southerly along the westerly line of Silverwood avenue distant 275.5 feet or thereabouts to the place of beginning; said parcel of land being the same parcel described as out lot ''A'' of the plat of Oakland Hills Subdivision. The parcel in question is a triangular piece of land on the northerly side of Oakland avenue, so-called, just westerly of the line between Waterford and Pontiac townships and is the site of what was formerly known as the Rising Sun school.''

The present suit is over the title to this piece of land, hereafter referred to as the schoolhouse land.

Elmer L. Beardslee, with his wife, are the only defendants who have any interest in the outcome of the suit. As far as the record shows, the entire one-half of the quarter section, of which the schoolhouse land is but a small part, belonged to one Wycoff at the time the plaintiff became interested in it. One Hannah J. Cannons subsequently acquired this one-half of the quarter section and she deeded it to defendant Beardslee and brother in 1909, and Beardslee subsequently bought out his brother's interest. The record discloses no conveyance or other written instrument from Wycoff to plaintiff, either when it

built the schoolhouse, over 50 years ago, or since then.

There is no dispute over the fact that for 35 years or thereabouts, prior to 1912, the schoolhouse was used for school purposes. About the year 1912, owing to changing conditions, the plaintiff ceased to use the schoolhouse for school purposes and made arrangements to transfer the school children to Pontiac.

Plaintiff has brought this suit for the purpose of quieting the title to the aforesaid schoolhouse land, basing its right to said land solely on the claim of adverse possession. The bill, as first filed, claimed title to the land by virtue of a lost deed that never had been recorded. Defendants answering said bill, as originally filed, stated that if a conveyance ever did exist, it was unquestionably given and only drawn ''so as to convey the land only for schoolhouse purposes,'' and that since the use thereof had been abandoned for said purposes, plaintiff lost its interest in said schoolhouse land. The answer further alleges that the holding of the land could not have been hostile and adverse inasmuch as it was with the express consent of the owner of the property, and that, therefore, there was no adverse possession. Plaintiff amended its bill, and abandoning its claim of a lost deed, it based its claims wholly on right by adverse possession. Defendants did not answer the amended bill, but their original answer is sufficient to raise the issues brought out in the case.

The testimony in the case is vague and uncertain, and there is absolutely no evidence as to what the terms of the grant to plaintiff were. There is the testimony of one witness whose father told him that Wycoff, the donor, had told him that the property

was given to plaintiff "so long as it was used for educational purposes," but no one could give competent testimony as to what Wycoff said, or what was said by the officers of plaintiff in regard to the terms of the donation, or what the real facts are. There was evidence to the effect that about 15 years prior to the beginning of the suit the property was abandoned for schoolhouse purposes. There is testimony by defendant Beardslee that after he acquired the property, and 35 years after the donation, he did make the claim that the property was only given for schoolhouse purposes. The circuit judge held that there was adverse possession prior to the abandonment of the property for schoolhouse purposes; that there was further adverse possession for the statutory period subsequent to the abandonment of the property for schoolhouse purposes; and further, that, even if defendants' theory is correct that the property was given over 50 years ago subject to a condition subsequent, the defendants had no right of reverter. He granted a decree quieting title in plaintiff, as prayed for in plaintiff's amended bill of complaint.

A careful consideration of the case convinces us that we should not disturb the result of the decree of the lower court. There is no question but that if defendants' claim is correct, under the decision of this court in the case of *Patrick* v. *Young Men's Christian Ass'n*, 120 Mich. 185, 196, the period of occupancy under a permissive right could not be considered as hostile and the time of such period tacked onto the period of hostile occupancy so as to show adverse possession.

There may even be some question as to the length of the period of time since the abandonment of the

property for schoolhouse purposes. It is not necessary to consider this question.

Under a fair and reasonable interpretation of what actually did take place, as far as the meagre testimony goes, we must conclude that the case falls entirely within the rule laid down in *Halpin* v. *School District,* 224 Mich. 308. The written grant in this latter case was as follows:

"Said land to be used as a site for schoolhouse. And the said parties of the second part do hereby agree that whenever said site ceases to be used for school purposes, then all their right and title to said land shall be given over to the said party of the first part, their heirs and assigns, in the same right and title as before the execution of this instrument; together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining." * * *

Defendants' counsel in a very able brief tries to distinguish between a conditional limitation and a condition subsequent, and claims that at most the grant to plaintiff was a conditional undertaking by which grantee acquired the property subject to this limitation, and that it was not a condition subsequent for which the right of reverter could not be conveyed or assigned before the breach. The distinction between a conditional limitation and a condition subsequent at times becomes very narrow.

The evidence in this case does not show that the condition could have been any stronger in favor of the defendants than the one set forth in the opinion in the *Halpin Case.* We believe that the present suit is entirely governed by the *Halpin Case,* and that at the most a right of reverter was reserved to grantor, his heirs and assigns, dependent upon a breach of a condition subsequent, and said right of

reverter could not be conveyed or assigned before the breach.

The opinion of the lower court should be affirmed, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.